

MORTGAGE
CORPORATION

Loan   #    1 Chellete

620 Market Street - One Centre Square - Knoxville, TN 37902
(800) 955-0021   (800) 813-8164 Fax

## DECLARATION OF DEFAULT FOR MOTION TO LIFT STAY

As of __6.12__, 20__17__ the following debtor is in post-petition default for the failure to remit the following installments as prescribed by their Chapter 13 bankruptcy plan. These amounts have been personally verified by me on this date.

The loan is currently due for the following post-petition amounts:

1. Installment payments due __4.28.17__ due for __4__ payments.

    Date last payment was received by creditor: __biwkly__

    _____

2. Amount of installment payments due:
    Number of installment payment dues:          __4__

    ____ installments @                     $ see attached del - biwkly
                                              and payment changes

    Total installment payments due
    as post-petition default:               $ 1541.72

3. Post-petition fees & charges             $

4. Escrow shortages or deficiencies         $ 172.20

5. Overage (Suspense)                       $

6. Total amount of post-petition default    $ 1731.06

                                            _____
                                            Legal Coordinator Stefanie Hildreth

| Due Date | pymt | escrow | | Total | | |
|---|---|---|---|---|---|---|
| 4/28/2017 | 385.43 | 51.62 | | **437.05** | | |
| 5/12/2017 | 385.43 | 51.62 | | **437.05** | | |
| 5/26/2017 | 385.43 | 34.48 | | **419.91** | | |
| 6/9/2017 | 385.43 | 34.48 | | **437.05** | | |
| | | | | | | |
| | 1541.72 | 172.2 | | **1731.06** | | |
| | | | | | | |

| Date | Description | Transaction Amount | Due Date Posted | Principal/ Princ Balance | Interest | Escrow/ Esc Balance | Overage/ Overage Balance | Fees/ Fees Balance | Legal Fees/ Legal Balance |
|---|---|---|---|---|---|---|---|---|---|
| 04/27/2017 | Escrow - Refund | (397.07) | | | | (397.07) | | | |
| 04/14/2017 | Customer Payment | 437.05 | 04/14/2017 | 151.95 | 233.48 | 672.49 | | | |
| | Balances After Posting | | | 68,133.20 | | 51.62 | | | |
| 03/31/2017 | Customer Payment | 437.05 | 03/31/2017 | 151.43 | 234.00 | 1,069.56 | | | |
| | Balances After Posting | | | 68,285.15 | | 51.62 | | | |
| 03/17/2017 | Customer Payment | 437.05 | 03/17/2017 | 150.91 | 234.52 | 1,017.94 | | | |
| | Balances After Posting | | | 68,436.58 | | 51.62 | | | |
| 03/03/2017 | Customer Payment | 437.05 | 03/03/2017 | 150.40 | 235.03 | 966.32 | | | |
| | Balances After Posting | | | 68,587.49 | | 51.62 | | | |
| 02/17/2017 | Customer Payment | 437.05 | 02/17/2017 | 149.89 | 235.54 | 914.70 | | | |
| | Balances After Posting | | | 68,737.89 | | 51.62 | | | |
| 02/03/2017 | Customer Payment | 437.05 | 02/03/2017 | 149.38 | 236.05 | 863.08 | | | |
| | Balances After Posting | | | 68,887.78 | | 51.62 | | | |
| 01/20/2017 | Customer Payment | 437.05 | 01/20/2017 | 148.87 | 236.56 | 811.46 | | | |
| | Balances After Posting | | | 69,037.16 | | 51.62 | | | |
| 01/06/2017 | Customer Payment | 437.05 | 01/06/2017 | 148.36 | 237.07 | 759.84 | | | |
| | Balances After Posting | | | 69,186.03 | | 51.62 | | | |
| 12/23/2016 | Customer Payment | 437.05 | 12/23/2016 | 147.85 | 237.58 | 708.22 | | | |
| | Balances After Posting | | | 69,334.39 | | 51.62 | | | |
| 12/09/2016 | Customer Payment | 437.05 | 12/09/2016 | 147.35 | 238.08 | 656.60 | | | |
| | Balances After Posting | | | 69,482.24 | | 51.62 | | | |
| 11/25/2016 | Customer Payment | 437.05 | 11/25/2016 | 146.85 | 238.58 | 604.98 | | | |
| | Balances After Posting | | | 69,629.59 | | 51.62 | | | |
| 11/11/2016 | Customer Payment | 437.05 | 11/11/2016 | 146.35 | 239.08 | 553.36 | | | |
| | Balances After Posting | | | 69,776.44 | | 51.62 | | | |
| 10/28/2016 | Customer Payment | 437.05 | 10/28/2016 | 145.85 | 239.58 | 501.74 | | | |
| | Balances After Posting | | | 69,922.79 | | 51.62 | | | |
| 10/14/2016 | Customer Payment | 437.05 | 10/14/2016 | 145.35 | 240.08 | 450.12 | | | |
| | Balances After Posting | | | 70,068.64 | | 51.62 | | | |
| 09/30/2016 | Customer Payment | 437.05 | 09/30/2016 | 144.86 | 240.57 | 398.50 | | | |
| | Balances After Posting | | | 70,213.99 | | 51.62 | | | |
| 09/16/2016 | Customer Payment | 437.05 | 09/16/2016 | 144.36 | 241.07 | 346.88 | | | |
| | Balances After Posting | | | 70,358.85 | | 51.62 | | | |
| 09/10/2016 | Escrow | | | | | 295.26 | | | |
| | Balances After Posting | | | | | (827.55) | | | |
| 09/02/2016 | Customer Payment | 437.05 | 09/02/2016 | 143.87 | 241.56 | 243.64 | | | |
| | Balances After Posting | | | 70,503.21 | | 51.62 | | | |
| | | | | | | 1,071.19 | | | |

| CREDITOR: 21st Century Mortgage Corporation | DATE FUNDED |
|---|---|

Buyer Name: Chelette Waymon II
Buyer Name: Chelette Shawna
Address: 4875 Larry Lane
City: Shreveport  County: Caddo
State: LA  Zip Code: 71107
Proposed Location of Manufactured Home: 4970 Quiet Acres Shreveport LA 71007

Co-Signer Name:
Co-Signer Name:

Buyer's Social Security Number:
Tel. No.: (318) 929-7785

"I", "me", and "us" refer to all persons who sign this contract as buyer or co-buyer, jointly and severally. "You" and "your" refer to the seller. The seller will submit this contract to 21st Century Mortgage Corporation, P.O. Box 477, Knoxville, Tennessee 37901; and , if approved, the contract will be assigned to 21st Century Mortgage Corporation

On the date of this contract, I buy from you on a credit sale basis the manufactured home described below, together with furnishing, equipment, appliances and accessories included in the manufactured home at the time of purchase (called "Manufactured Home").

**Description of Manufactured Home**  New ☒ Used ☐

| TRADE NAME: Oak Creek | ADDITIONAL ACCESSORIES AND FURNISHINGS: | | | |
|---|---|---|---|---|
| YEAR: 1997  MODEL: 974 | ITEM | SERIAL# | ITEM | SERIAL# |
| LENGTH: 72  WIDTH: 31 | A/C | A02687 | | |
| SERIAL NO: OC059710262A | Skirting | N/A | | |
| SERIAL NO: OC059710262B | | | | |

**PAYMENTS:** I severally, jointly and in silido agree to pay you the amount shown as the Total of Payments according to the payment schedule shown in the Federal Truth-in-Lending Disclosure section. The amount and terms of payment of the Total of Payments are stated in a certain Promissory Note of even date herewith made and delivered not in payment of, but as evidence of the amounts to become due under this mortgage.

**SECURITY INTEREST:** The buyer(s) grants security interest under Louisiana Law, including, but not limited to, the Manufactured Home Property Act, and the Uniform Commercial Code.

**ITEMIZATION OF AMOUNT FINANCED:**

1. Cash Price (Including Sales Tax of $0.00) .................... $71,600.00
   Cash Downpayment ............................ $5,000.00
   Trade-In (Year, Make, Model)
     Length  Width
     Gross Value $0.00  Liens $0.00
   Net Trade-In Value ................................ $0.00
2. Total Downpayment ................................... $5,000.00
3. Unpaid Balance of Cash Price (1 minus 2) .......................... $66,600.00
4. Amounts paid to others on my behalf
   a. To Insurance Companies
     (1) Property Insurance ..................... $2,469.00
     (2) Credit Life Insurance ..................... $0.00
   b. To Public Officials
     (1) Certificate of Title ..................... $0.00
     (2) Filing Fees ..................... $105.00
   c. To Ext Service Policy ..................... $567.00
   d. To Appraisal ..................... $250.00
   e. To Title Insurance ..................... $70.00
   f. To Land Improvements ..................... $8,800.00
   g. To Buy-down Pts ..................... $7,738.00
   h. To Land Purchase ..................... $17,500.00
   i. To Discount Pts/Doc Fee ..................... $702.52
   j. To Closing Fees ..................... $365.00
        Total (items a. through j.) ................................. $38,566.52
5. Unpaid Balance (3 plus 4) ..................................... $105,166.52
6. Prepaid Finance Charge ........................................ $8,440.52
7. Amount Financed (5 minus 6) ................................. $96,726.00

**INSURANCE:**

PROPERTY INSURANCE ON THE MANUFACTURED HOME IS REQUIRED FOR THE TERM OF THIS CONTRACT. I HAVE THE RIGHT TO OBTAIN SUCH INSURANCE FROM ANYONE AUTHORIZED BY LAW TO SELL IT. However, by checking the appropriate box below, I elect to buy through you property insurance of the specified coverage, term and premium.

| Type of Insurance | Term | Premium |
|---|---|---|
| Physical Damage | 36 months | $2,469.00 |

CREDIT LIFE INSURANCE IS NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST.

| Type of Coverage | Term | Premium |
|---|---|---|
| | | $0.00 |

This insurance may not pay off all my debt and the exact amount of coverage is shown on my policy or certificate. If I elect credit insurance, the name(s) of the proposed insured(s) are:
Proposed Insured:  Waymon Chelette II
Proposed Insured:
  (Only co-buyer can be insured jointly.)

My signature indicates my election to obtain credit life insurance coverage and/or Property Insurance for the term and premium shown.
Signature _Waymon Chelette_ Date 3/20/97
Signature _Shawna Chelette_ Date 3/20/97
(If joint coverage desired, both proposed insureds must sign.)

_Waymon Chelette_
Buyer
_Shawna Chelette_
Buyer

Cosigner

Cosigner

Page 1 Copy 2 of 4 to Corporate

14-12177 - #42-1  File 06/16/17  Enter 06/16/17 15:26:09  Exhibit pay history  contract note  mortgage  name change Pg 4 of 17

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate: | FINANCE CHARGE The dollar amount the credit will cost me: | Amount Financed The amount of credit provided to me or on my behalf: | Total of Payments The amount I will have paid after I have made all payments as scheduled: | Total Sale Price The total cost of my purchase on credit including my down payment of $5,000.00 |
|---|---|---|---|---|
| 8.89% | $180,812.40 | $96,726.00 | $277,538.40 | $282,538.40 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 360 | $770.94 | Monthly, beginning ~~XXXXXXXX~~ 6/1/97 |
|  |  | Monthly, beginning |

Security: I give you a security interest in:
☒ the goods or property being purchased
☒ real property located at: 4970 Quiet Acres, Shreveport, LA

Late Charge: If a payment is more than 15 days late, I will be charged 5% of the unpaid amount of such payment, not to exceed $5.00.
Prepayment: If I pay off early, I will not have to pay a penalty, but I will not be entitled to a refund of the prepaid finance charge if any.
Assumption: Someone buying my manufactured home may, under certain circumstances, be allowed to assume the remainder of the contract on the original terms.
See "Additional Contract Terms and Conditions" for additional information about nonpayment default, required payment in full before the schedule date and prepayment refunds and penalties.

NOTICE TO THE BUYER: 1. DO NOT SIGN THIS DOCUMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 3. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS MOBILE HOME OWNERS INSURANCE IS INDICATED IN THE PROPERTY INSURANCE BOX ABOVE. 4. I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS RETAIL INSTALLMENT CONTRACT.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

(Buyer) _[signature]_  (Co-Signer) _____
(Buyer) _[signature]_  (Co-Signer) _____

ACCEPTED: The foregoing Contract is hereby assigned under the terms of the assignment on the reverse side.
Nationwide Housing Systems, Inc
(Seller)                                                    by: _[signature]_ _[signature]_
                                                                (Title)
(Seller Address)  3500 East Texas Street  Bossier City,  LA  71111
                  (City)                   (State)  (Zip)

ADDITIONAL TERMS AND CONDITIONS

SECURITY INTEREST: I grant you a security interest under the Uniform Commercial Code in (1) the Manufactured Home and in all goods that are or may hereafter by operation of law become accessions to it, (2) any refunds of unearned insurance premiums financed in this contract, and (3) all proceeds of such Manufactured Home and accessions. This security interest secures payment and performance of my obligations under this contract, including any additional debt arising because of my failure to perform my obligations under this contract and it also secures any contractual extensions, renewals or modifications. If real estate secures payment and performance of my obligations under this contract, I have signed a mortgage or deed of trust.

PREPAYMENT: I MAY PREPAY THIS CONTRACT IN FULL OR IN PART AT ANYTIME WITHOUT PENALTY, BUT I WILL NOT BE ENTITLED TO A REFUND OF THE PREPAID FINANCE CHARGE, IF ANY.

PROPERTY INSURANCE: I am required to insure the Manufactured Home against physical damage for the term of the contract at my expense. The minimum coverage will be Broad Form Comprehensive, including flood coverage, in an amount equal to the actual cash value of the Manufactured Home. The insurance policy will contain a loss payable clause protecting you (as your interest may appear), and provide for 10 day notice of cancellation to you. I have the right to choose the person through whom the property insurance is obtained. If my insurance coverage expires or is canceled prior to payment in full of this contract, I must obtain no less than the minimum coverage at my expense for the remaining term of the contract. Should I fail to maintain the minimum coverage, you may, but are not obligated to, obtain the minimum coverage. If you do so, the cost, plus interest at the annual percentage rate provided for in this contract, will be added to my debt and I will repay such amount during the term of the policy.

DEFAULT: I will be in default if: (i) I do not make a payment on time; (ii) I do not keep any of my other promises under this Contract; (iii) I file a case, or someone else files a case against me, under the United States Bankruptcy Code; (iv) you feel in good faith that the Manufactured Home is in danger or that I will not be able to continue my payments. The default described under (iv) does not apply if this Contract is guaranteed by the Veteran's Administration. You will give me notice of the default except when I voluntarily surrender or abandon the Manufactured Home. I will have the right to cure the default during the notice period. If I do not cure the default, you may do either or both of the following: (a) Acceleration of Payments: You can require me to immediately pay you the entire remaining balance of the Contract less the refund described in the Prepayment Refund paragraph above. (b) Repossession: you will have all the foreclosure rights of a creditor and mortgage under the Louisiana Code of Civil Procedure and Louisiana revised statutes of 1950. You will have the right to retain all payments made prior to foreclosure, and I will remain liable for any deficiency if allowed by law. If I default, you can do whatever is necessary to correct my default. If you spend money to correct my default, I will pay you back immediately with interest at the annual percentage rate specified on the front of this Contract.

ATTORNEY'S FEES AND COLLECTION CHARGES: If I default as described in the preceding paragraph, I will pay actual expenses of collection not to exceed $150.00 and if you refer this Contract to an attorney for collection who is not your salaried employee, I will pay reasonable attorney's fees not to exceed 25% of the amount due with a minimum of $15.00.

CONFESSIONS OF JUDGEMENT/WAIVER: For purposes of foreclosure under Louisiana executory process procedures, I confess judgement in your favor up to the full amount due under this Contract (in principal, interest, late charges, costs and attorney's fees), and in the amount of all other funds which you may advance on my behalf under this Contract. To the extent

Page 2 Copy 2 of 4 to Corporate

permitted, I waive; (a) the benefit of appraisal as provided ticles 2332, 2336, 2723 and 2724 of the Louisiana Code Procedure, and all other laws with regard to appraisal upon judicial sale; (b) the demand and 3 days delay under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (d) the 3 days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other provisions provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. I hereby waive any and all exemptions from seizure, including any homestead exemption, with regard to the mortgaged property as may be granted under applicable law. Any reference to a provision of state law shall be deemed to refer to that law as is now in effect, or as it may later be amended, whether or not any provision is renumbered or renamed.

**OTHER TERMS AND CONDITIONS:** I agree: (a) not to remove the Manufactured Home from the address shown on this contract unless I notify you in advance and receive your written consent; (b) not to sell the Manufactured Home without first obtaining your written consent; (c) that if the Manufactured Home is a personal property I will not let it become part of any real estate; (d) not to encumber or abandon the Manufactured Home or use it for hire or illegally; (e) to pay promptly all taxes and any liens and encumbrances of the Manufactured Home; and (f) to pay with my monthly installments, if requested to do so by you, the estimated amount necessary to pay yearly taxes, assessments and insurance premiums that will become due within the next twelve month period.

**CREDIT INFORMATION:** You may investigate my credit history and credit capacity in connection with opening and collecting my account and share information about me and my account with credit reporting agencies. You may sell or otherwise furnish information about me, including insurance information, to all others who may lawfully receive such information. You may furnish specific information about the Manufactured Home and any insurance policies on the Manufactured Home to any insurance agent to enable such agent to quote premiums to me and solicit my insurance business.

**ASSIGNMENT:** You may assign this contract to any person or entity. All rights granted to you under this contract shall apply to any assignee of this contract.

**WAIVER AND MODIFICATION:** Your waiver of any default shall not constitute a waiver of any other default. No part of this contract shall be modified, changed, or altered unless in writing and signed by one of your officers.

**ENTIRE AGREEMENT:** This contract and any separate written warranty constitute the entire agreement between us. I agree that no representations, oral or written, have been made to me to induce me to enter into this contract, other than the representations expressly set forth in this contract and in any separate written warranty.

**WARRANTIES:** Any warranties relating to a new Manufactured Home have been provided to me by my dealer, or warranty company, or the manufacturer in a separate writing, receipt of which I hereby acknowledge. Except as provided in such a writing, if any, there are no warranties, express or implied, including but not limited to warranties of merchantability or fitness for a particular purpose. I acknowledge that I have examined the Manufactured Home and that, if it is used, I accept the Manufactured Home as is. The year of the Manufactured Home as specified in this contract is for identification purposes only. Except to the intent expressly implied herein, no assignee of this agreement shall be liable, either in tort or contract, for any direct or indirect damages or for any special, incidental, or consequential damages arising out of or in connection with this contract or transaction.

**VALIDITY:** Wherever possible each provision of this contract shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this contract shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this contract. This contract shall be of no effect until and unless signed by me and you.

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNT PAID BY THE DEBTOR HEREUNDER.**

**ASSIGNMENT BY SELLER**

TO 21st CENTURY MORTGAGE CORP.. (21st Century):
For value received, we hereby assign within contract and all our right, title and interest in it, and its collateral to 21st Century (Assignee), and warrant all of the following: 1) that this contract is the result of a sale of our own property or services; 2) that we have full and perfect title to and right to convey this contract free of any encumbrance, lien, or any interest of third parties of any nature whatsoever; 3) that all services and installation work in connection with this contract will be completed according to the contract at the time this contract is sold to the Assignee; 4) that this contract accurately and correctly reflects a genuine, bona fide sale and the price and terms thereof, and is valid and in compliance with any applicable installment sales law or other applicable state or federal law or administrative regulation; 5) that the goods or services covered by this contract have been unconditionally accepted by the parties to the contract; 6) that at the time this contract is sold to the Assignee, the goods and services are in the possession of the obligor and are the identical goods and services described in or related to the contract; 7) that the amount due from the obligor is not disputed or subject to any set-off, deduction, credit or counterclaim; 8) that there is no undisclosed delinquency; 9) that the down payment is correctly stated in the contract; 10) that we have received cash, or its proper equivalent, for the down payment, no part of which was loaned by us, directly or indirectly, to the Buyers; 11) that this contract is the entire and sole contract between us and the obligor as to the sale of goods or services evidenced herein; 12) that there is no undisclosed agreement, concession, or litigation of any nature affecting this contract; 13) that the parties to this contract were competent at the time it was executed; 14) that there are no valid defenses in law or equity to this contract as it exists in the hands of the Assignee after this conveyance; 15) that all signatures on this contract are genuine. If any of the foregoing warranties are untrue, regardless of Assignee's knowledge or lack of knowledge or reliance thereon, Assignor hereby unconditionally agrees to repurchase the documents on demand from Assignee for the balance remaining unpaid plus any expense of collection, repossession, foreclosure, transportation, storage, attorney fees, and court costs incurred by Assignee less any customary refund by Assignee of unearned finance charges. FURTHER, if a "With Recourse" assignment is initialed below, we engage that the within contract will be paid according to its tenor, and that if it is not, we shall pay it to the Assignee or to any subsequent assignee, regardless of the order in which the assignments are made. If a "With Limited Recourse" assignment is initialed below, we engage that the within contract will be paid according to its tenor for the period shown below; and that if it is not, we shall pay it to the Assignees or to any subsequent assignee, regardless of the order in which the assignments are made. If a "Repurchase" assignment is initialed below, we engage that if Assignee or any subsequent assignee repossess any of the collateral on this contract, we will repurchase the collateral for the unpaid balance of the contract, or its fair market value, whichever is higher. If a "Without Recourse" assignment is initialed below, this Assignment is without recourse.

With Recourse _____ . With Limited Recourse for first _____ months of contract _____ . Repurchase Assignment _____ By _____ Without Recourse ✓

Seller/Assignor

21st CENTURY MORTGAGE CORP.. assigns to _____ the foregoing contract, including all amounts payable by buyer and the security interest in the collateral. This assignment is without recourse unless other terms are agreed to in writing.

Date: _____ By: _____ Title: _____

_____ Buyer
_____ Buyer
_____ Cosigner
_____ Cosigner

LA-FX 1/95

Page 3 Copy 2 of 4 to Corporate

C:\MSOFFICE\WINWORD\BIGDOCS\LA21ST.DOC 11/7/96

Company Number:             st CENTURY MORTGAGE CORP.        Printed: 03/18/97 3:30 PM
APPRO ID#:                    **BIWEEKLY PAYMENT RIDER**

This Biweekly Payment Rider ("BPR") amends, supplements and is incorporated into the Retail Installment Contract - Security Agreement ("Contract") of the same date covering the Purchase and Financing by·by Buyer and/or Co-Buyer a Manufactured Home from Seller and its assigns ("Seller").

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate: | FINANCE CHARGE The dollar amount the credit will cost me: | Amount Financed The amount of credit provided to me or on my behalf: | Total of Payments The amount I will have paid after I have made all payments as scheduled: | Total Sale Price The total cost of my purchase on credit including my down payment of $5,000.00 |
|---|---|---|---|---|
| 8.89 | $123,739.96 | $96,726.00 | $220,465.96 | $225,465.96 |

My payment schedule will be:

| Number of Biweekly Payments | Amount of Biweekly Payments | When Biweekly Payments Are Due |
|---|---|---|
| 572 | $385.43 | Biweekly, Beginning ~~05/01/97~~ |
| | | Biweekly, Beginning 5/15/97 |
| | | Biweekly, Beginning |
| | | Biweekly, Beginning |

Security: I give you a security interest in:
☒ the goods or property being purchased
☒ real property located at:    4970 Quiet Acres, Shreveport, LA
**Late Charge:** If a payment is more than 15 days late, I will be charged 5% of the unpaid amount of such payment, not to exceed $5.00.
**Prepayment:** If I pay off early, I will not have to pay a penalty, and I will be entitled to a refund of the unearned portion of the precomputed finance charge that I have paid, but I will not be entitled to a refund of any other prepaid finance charge. The unearned portion of the precomputed finance charge will be refunded according to the actuarial method.
**Assumption:** Someone buying my manufactured home may, under certain circumstances, be allowed to assume the remainder of the contract on the original terms, as amended by this rider.
See section on "Additional Contract Terms and Conditions" in the "Retail Installment Contract - Security Agreement" for additional information about nonpayment default, required payment in full before the scheduled date and prepayment refunds and penalties.

**Authorization for Pre-Arranged Withdrawals** - Buyer authorizes Seller to make withdrawals as authorized herein from Buyer's bank or other depository Financial Institution ("Bank") and authorizes the Bank to charge such electronic transfers or withdrawals to Buyer's Account. These withdrawals will be made for the limited purpose of paying the amounts due under the Contract including an amount for insurance escrow. Adjusting entries to correct rounding and errors is also authorized. These withdrawals are to be made under the National Automated Clearing House Association procedures.

Biweekly Principal & Interest: $385.43      Escrow: $0.00      Total Biweekly Payments: $385.43

Customer's Bank Account Name (Must Be Exact):

Account Number (To Draft) Attach Check Copy:

Name of Bank:

**Default** - In addition to the events of default as stated in the Contract, Buyer will be in default if proper amounts are not maintained in the Account to cover Payments required under this BPR.
    Seller may terminate Buyer's right to make Payments by automatic deduction for any reason including the default of any contract provision in which case Buyer will be required to make one (1) Payment each month in substantially the same as in the Contract adjusted for insurance escrow payments.
    Seller's rights upon default stated in this paragraph are in addition to all rights and remedies contained in the Contract.
**Other Amendments to Retail Installment Contract-Security Agreement.**
    A. While this BPR is in effect, the disclosure made above governed your contract, if however you ever revert to the terms of the original contract, modified by this BPR, the terms of the Contract including the disclosure made therein will govern.
    B. The Contract and this BPR are intended to take advantage of the preemption of State law provided in Section 501A of the Depository Institutions Deregulatory Act of 1980 and Section 801 through 805 of the Alternative Mortgage Transaction Parity Act of 1982 ("Acts"). Any term or condition of the Contract or this BPR which is inconsistent with the Acts or the preemption regulation shall be void and of no effect.
    C. Buyer authorizes Seller to release any information requested by Bank or those involved in the electronic transfer system.
    D. Buyer agrees to pay any and all charges imposed by Bank in processing and transferring Biweekly Payments from the Buyer's Account to Seller Account.
    E. None of the provisions of this BPR are to relieve Buyer from any obligations or promises contained in the Contract.
    F. If a Biweekly Payment is not received through the electronic transfer system, then Buyer will promptly remit any missing Biweekly Payments. If a scheduled Biweekly Payment is collected twice through the electronic transfer system or by other means, the additional payment will apply to the next scheduled Biweekly Payment or refunded directly to the Buyer.
    Buyer, having been offered the option of paying monthly or biweekly according to the terms of this Biweekly Rider, has elected and hereby accepts and agrees to the terms and conditions contained herein.
    Notice to Buyer: Do not sign before you read this Biweekly Payment Rider, or if it contains blank spaces. You must receive a copy.

Buyer: _/s/ Waymon Chelette II_   3/20/97     Co-Buyer: _/s/ Shawna Chelette_
    Signature of Waymon Chelette II                 Signature of: Shawna Chelette

Seller: Nationwide Housing Systems, Inc
By: _____        _____
                                                                             Authorized Check Signer if Other Than Buyer
VMF288 (Rev. 9/92)BWKLY RDR        Copy of to Corporate        C:\MSOFFICE\WINWORD\BIGDOCS\BIWEEKLY.DOC 11/7/96
                                                 3/20/97

# Promissory Note

$ _96,726.00_  
ANNUAL PERCENTAGE  
RATE _7.99_ %

City _BOSSIER CITY_ Parish _BOSSIER_  
Louisiana, _MARCH 20_ 19 _97_

For value received, Undersigned (jointly, severally and insolido), promise(s) to pay to the order of Bearer the sum($_96,726.00_) _NINTY SIX THOUSAND SEVEN HUNDRED TWENTY SIX AND NO/100_ Dollars (Total of Payments) payable in _360_ monthly installments of $ _710.94_ on the like day of each succeeding month commencing _MAY 1_ 19_97_, with interest after maturity at the Annual Percentage Rate shown above.

Undersigned also promise(s) to pay a delinquency charge equal to the lesser of $5.00 or 5% of any installment in default for more than 15 days. If undersigned defaults as described in the preceding paragraph, undersigned will pay actual expenses of collection not to exceed $150.00 and if the bearer refers this Promissory Note to an attorney who is not a salaried employee of Bearer, undersigned will pay reasonable attorney's fees not to exceed 25% of the amount due with a minimum of $15.00.

Undersigned understands that this promissory note is executed in connection with a Retail Installment Contract and Chattel Mortgage of even date herewith. Undersigned further understand(s) that the obligation evidenced hereby may be prepaid in full at any time prior to maturity of the final installment hereunder, and upon prepayment Undersigned shall receive a rebate of the unearned portion of the FINANCE CHARGE. No rebate will be made if the amount is less than $1.00.

Undersigned hereby severally waives presentment, demand for payment, protest and notice of non-payment and protest and diligence in bringing suit against any party hereto, and all endorsers and guarantors consent that the time of payment may be extended from time to time after maturity without notice. Waiver by holder of any default shall not be deemed a waiver of any other default. All exemptions are hereby waived.

Undersigned hereby agree(s) that upon non-payment of any installment at its maturity, all remaining installments shall, at the option of the holder of this note, become immediately due and payable.

**NE VARITUR**

For identification with a Retail installment Sale and Chattel Mortgage acknowledged before me this _20_ day of _March_ 19_97_.  
Notary Public _[signature]_

_[signature]_ Maker  
_[signature]_ Co-Maker  
_____ Co-signer

## Notice

Any Holder of this consumer credit contract and note is subject to all claims and defenses which the Debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

For value received the undersigned does hereby sell assign and transfer to 21st Century Mortgage Corporation (hereinafter "Creditor") or its order, Undersigned's rights, title and interest in this promissory note, and authorizes Creditor to do every act and thing necessary to collect and discharge the same.

The undersigned guarantees payment of this note to the extent provided by the terms and provisions of any agreements between Undersigned and Creditor including the assignment agreement for the Retail Installment Contract and Chattel Mortgage executed in connection herewith, all of which are made a part hereof by reference.

_Nationwide Homes_ _____ date _3/20/97_  
SELLER  
BY _[signature]_ Title _Dlr_

LA-PM 2-97 TWW    Original and copy to 21st Century, Copy for Customer, Copy for DLR. File

M 2602    1551668 FUTURE OBLIGATIONS MORTGAGE

STATE OF LOUISIANA

PARISH OF BOSSIER

BE IT KNOWN, that on this 20th day of March, 1997, before me, the undersigned Notary Public duly commissioned and qualified, personally came and appeared:

WAYMON (NMN) CHELETTE, II and SHAWNA LANE CHELETTE, husband and wife, residents of Caddo Parish, with mailing address of 4970 Quiet Acres, Shreveport, LA 71107

(the "Borrower"), who declared that Borrower does by these presents declare and acknowledge an indebtedness unto:

21st CENTURY MORTGAGE CORPORATION
607 Market Street, Suite 521
Knoxville, TN 37902

(the "Lender"), here present who accepts this Mortgage.

## RECITALS

A. The Borrower is or may become indebted unto the Lender for loans made or to be made by the Lender.

B. In order to secure the full and punctual payment and performance of all present and future amounts, liabilities and obligations of the Borrower to the Lender or to any successor or transferee thereof, whether said amounts, liabilities or obligations are liquidated or unliquidated, now existing or hereafter arising, whether represented by a Note or otherwise, in principal, interest, deferral and delinquency charges, prepayment premiums, costs and attorney's fees, as therein stipulated (collectively, the "Obligations"), the Borrower has agreed to execute and deliver this Mortgage and Security Agreement (this "Mortgage") and to grant a mortgage lien and continuing security interest in and to the Mortgaged Property (as hereinafter defined).

## AGREEMENT

Section 1 (a)    Hypothecation. In order to secure the Obligations, the Borrower does by these presents specially mortgage, affect, hypothecate and grant a continuing security interest in, to inure to the use and benefit of the Lender, the following described property, to-wit:

LOT FORTY-THREE (43), QUIET COUNTRY, a subdivision in Caddo Parish, Louisiana, as per plat thereof recorded in Conveyance Book 2300, Pages 13 and 15, Records of Caddo Parish, Louisiana, together with all buildings and improvements located thereon, and all rights thereto belonging, having a municipal address of 4970 Quiet Acres Shreveport, LA 71107.

Further together with the right to receive proceeds attributable to the insurance loss of the Premises, all as provided in Louisiana Revised Statutes 9:5386.

All of the foregoing immovable and movable property and incorporeal rights covered by and subject to this Mortgage are herein collectively referred to as the "Property".

The Property is to remain so specially mortgaged, affected and hypothecated unto and in favor of Lender until the full and final payment or discharge of the Obligations, and Borrower is herein and hereby bound and obligated not to sell or alienate the Property to the prejudice of this act.

(b)    Maximum Amount, Termination. The maximum amount of the Obligations that may be outstanding at any time and from time to time that this Mortgage secures, including without limitation as a mortgage and as a security agreement, including all principal, interest and any expenses or Advances (as hereinafter defined) incurred by the Lender and all other amounts included within the Obligations, is one million dollars. The Borrower acknowledges that this Mortgage secures all loans and advances made or incurred by the Lender under or pursuant to this Mortgage, whether optional or obligatory by the Lender. This Mortgage is and shall remain effective, even though the amount of the Obligations may now be

FOM.1WP/P23.003/050196          ( )' 563

zero or may later be reduced to zero, until this Mortgage is released by written act of release executed by Lender (or any future mortgagee of record, as provided by applicable law) directing its erasure. When no Obligations secured by this Mortgage exist and the Lender is not bound to permit any Obligations to be incurred, this Mortgage may be terminated by the Borrower upon thirty (30) days' prior written notice sent by the Borrower to the Lender in accordance with the provisions of this Mortgage.

(c) <u>Mortgaged Property</u>. All of the foregoing immovable and movable property and incorporeal rights covered by and subject to this Mortgage, including the Property, is hereinafter referred to collectively as the "Mortgaged Property".

Section 2. <u>Performance of Obligations</u>. The Borrower will repay the Obligations according to the reading, tenor and effect of this Mortgage. The Borrower will do and perform every act required of it by this Mortgage and the Note at the time or times and in the manner specified.

Section 3. <u>Title to Mortgaged Property</u>. The Borrower represents and warrants that it has and will maintain good and merchantable title to the Mortgaged Property, free of all liens and encumbrances except those created in favor of the Lender and those permitted by this Mortgage. Furthermore, the Borrower has not heretofore conveyed or agreed to convey or encumber the Mortgaged Property in any way, except in favor of the Lender or as permitted by this Mortgage or the Loan Agreement.

Section 4. <u>Taxes and Other Liens</u>. The Borrower will pay and discharge promptly when due all taxes, assessments and governmental charges or levies imposed upon it or upon its income or upon the Mortgaged Property as well as all claims of any kind (including claims for labor, materials, supplies and rent) which, if unpaid, might become a lien upon any or all of the Mortgaged Property.

Section 5. <u>Insurance</u>. The Borrower will procure and maintain for the benefit of the Lender original paid-up insurance policies with amounts, form and substance and expiration dates set forth in the Loan Agreement or otherwise as acceptable to the Lender and containing a non-contributory standard mortgagee clause or its equivalent in favor of the Lender. The policy shall contain an agreement by the insurer not to cancel or amend the policy without giving the Lender at least 30 days prior written notice of its intention to do so. The Borrower will deliver original or certified policies to the Lender on the date of this Mortgage, and the Borrower shall deliver original or certified renewal policies with satisfactory evidence of payment not less than 15 days in advance of the expiration date of the existing policy or policies. In the event the Borrower should, for any reason whatsoever, fail to keep the Mortgaged Property or any part thereof so insured, or to keep said policies so payable, or fail to deliver to the Lender the original or certified policies of insurance the renewals therefor upon demand, then the Lender, if it so elects, may itself have such insurance effected in such amounts and with such companies as it may deem proper and may pay the premiums therefor. If the Mortgaged Property is damaged or destroyed, in whole or in part, by fire or other casualty, the proceeds shall be applied as provided in the Loan Agreement.

Section 6. <u>Condemnation</u>. The Borrower hereby assigns to the Lender any and all awards that may be given or made in any proceedings by any legally constituted authority to condemn or expropriate the Mortgaged Property, or any part thereof, under power of eminent domain.

Section 7. <u>Right of Inspection</u>. The Borrower will permit any officer, employee or agent of the Lender to visit and inspect the Mortgaged Property, examine the books of record and accounts of the Borrower, at such reasonable times and on reasonable notice and as often as the Lender may reasonably desire.

Section 8. <u>Compliance with Laws and Covenants</u>. The Borrower will observe and comply with all laws, statutes and regulations, directions and requirements of all federal, state, parochial, municipal and other governments.

Section 9. <u>Maintenance of the Mortgaged Property</u>. The Borrower will maintain, preserve and keep the Mortgaged Property at all times in thorough repair, good working order and good condition and will, from time to time, make all necessary repairs and improvements so that the security of this Mortgage shall at no time become impaired.

Section 10. <u>Environmental Indemnity</u>. The Borrower will defend, indemnify and hold Lender and its directors, officers, agents and employees harmless from and against all claims, demands, causes of action, liabilities, losses, costs and expenses

FOM.1WP/P23.003/050196   - 2 -
( , 564

14-12177 - #42-1  File 06/16/17  Enter 06/16/17 15:26:09  Exhibit pay history    contract note    mortgage    name change Pg 10 of 17

(including, without limitation, costs of suit, reasonable attorneys' fees and fees of expert witnesses) arising from or in connection with (i) the presence in, on or under or the removal from the Mortgaged Property of any hazardous substances or solid wastes (as hereafter defined), or any releases or discharges of any hazardous substances or solid wastes on, under or from such property, (ii) any activity carried on or undertaken on or off the Mortgaged Property, whether prior to or during the term of this Mortgage, and whether by the Borrower or any predecessor in title or any officers, employees, agents, contractors or subcontractors of Borrower or any predecessor in title, or any third persons at any time occupying or present on the Mortgaged Property, in connection with the handling, use, generation, manufacture, treatment, removal, storage, decontamination, clean-up, transport or disposal of any hazardous substances or solid wastes at any time located or present on or under the Mortgaged Property, or (iii) any breach of any environmental representation, warranty or covenant under the terms of this Mortgage. The terms "hazardous substance" and "release" as used in this Mortgage shall have the meanings specified in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986 (as amended, "CERCLA").

Section 11. <u>Further Assurances</u>. The Borrower will keep the lien of this Mortgage valid and unimpaired. The Borrower will promptly (and in no event later than 30 days after written notice from the Lender is received) cure any defects in the creation, execution and delivery of this Mortgage and the Note.

Section 12. <u>Liens</u>. The Borrower will not create, incur, assume or permit to exist any judgment, lien or other encumbrance against all or any portion of the Mortgaged Property, except for (a) liens for taxes, assessments, or other governmental charges not yet due or which are being contested in good faith by appropriate action promptly initiated and diligently conducted, if such reserve as shall be required by generally accepted accounting principles shall have been made therefor; (b) the liens in favor of the Lender to secure the Obligations of the Borrower to the Lender under this Mortgage.

Section 13. <u>Sale or Encumbrance</u>. The Borrower shall not sell, convey or otherwise transfer or dispose of all or any portion of the Mortgaged Property.

Section 14. <u>Advances by Lender</u>. The Borrower authorizes the Lender to advance any sums necessary, limited only as hereinafter set forth, for the purpose of paying (i) insurance premiums, (ii) taxes, forced contributions, service charges, local assessments and governmental charges, (iii) any liens or encumbrances affecting the Mortgaged Property (whether superior or subordinate to the lien of this Mortgage) not permitted by this Mortgage, (iv) necessary repairs and maintenance expenses or (v) any other amounts which the Lender deems necessary and appropriate to preserve the validity and ranking of this Mortgage, to cure any Event of Default (as hereinafter defined) or to prevent the occurrence of any Event of Default (collectively, the "Advances") of whatever kind; provided, however, that nothing herein contained shall be construed as making such Advances obligatory upon Lender, or as making Lender liable for any loss, damage, or injury resulting from the nonpayment thereof. The Borrower covenants and agrees that within five (5) days after demand therefor by the Lender, the Borrower will repay the Advances to the Lender, together with interest thereon at the rate of 15% per annum, and in addition will repay any other reasonable costs, attorneys' fees and expenses, charges and expenses of any and every kind for the full protection and preservation of the Mortgaged Property or this Mortgage, including payments required in respect to any lien, privilege or mortgage affecting the Mortgaged Property, together with interest thereon at the rate of 15% per annum, all of which amounts shall be included in the Obligations secured hereby.

Section 15. <u>Events of Default</u>. Any of the following events shall be considered an "Event of Default" as that term is used herein:

    (a)  <u>Principal and Interest Payments</u>. The Borrower fails to make payment when due of any principal or interest installment or any other Obligation to the Lender;

    (b)  <u>Representations and Warranties</u>. Any representation or warranty made by the Borrower proves to have been incorrect in any material respect as of the date thereof; or any representation, statement (including financial statements), certificate or data furnished or made by the Borrower under this Agreement, proves to have been untrue in any material respect;

    (c)  <u>Covenants</u>. The Borrower defaults in the observance or performance

FOM.1WP/P23.003/050196      - 3 -

067 565

14-12177 - #42-1  File 06/16/17  Enter 06/16/17 15:26:09  Exhibit pay history   contract note   mortgage   name change Pg 11 of 17

of any of the covenants or agreements contained in this Mortgage;

(d) <u>Involuntary Bankruptcy or Receivership Proceedings</u>. A receiver, conservator, liquidator or trustee of the Borrower or of any of its property is appointed by order or decree of any court or agency or supervisory authority having jurisdiction; or an order for relief is entered against the Borrower under the Federal Bankruptcy Code; or the Borrower is adjudicated bankrupt or insolvent; or any material portion of the properties of the Borrower is sequestered by court order and such order remains in effect for more than 30 days after the Borrower obtains knowledge thereof; or a petition is filed against the Borrower under any state, reorganization, arrangement, insolvency, readjustment of debt, dissolution, liquidation or receivership law of any jurisdiction, whether now or hereafter in effect, and such petition is not dismissed within 60 days;

(e) <u>Voluntary Petitions</u>. The Borrower files a case under the Federal Bankruptcy Code or seeks relief under any provision of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, or consents to the filing of any case or petition against it under any such law;

(f) <u>Assignments for Benefit of Creditors</u>. The Borrower makes an assignment for the benefit of its creditors, or admits in writing its inability to pay its debts generally as they become due, or consents to the appointment of a receiver, trustee or liquidator of the Borrower or of all or any part of its property;

(g) <u>Attachment</u>. A writ or warrant of attachment, seizure or any similar process shall be issued by any court against the Property or all or any material portion of the property of the Borrower, and such writ or warrant of attachment or any similar process is not released or bonded within 30 days after its entry;

(h) <u>Condemnation</u>. The Property, or any portion thereof, is condemned or expropriated under power of eminent domain by any legally constituted governmental authority.

Section 16. <u>Remedies</u>. (a) Upon the happening of any Event of Default specified in the preceding Section, the Lender may by written notice to the Borrower declare the entire principal amount of all Obligations then outstanding, including interest accrued thereon, to be immediately due and payable without presentment, demand, protest, notice of protest or dishonor or other notice of default of any kind, all of which are hereby expressly waived by the Borrower.

(b) Upon the occurrence of any Event of Default, the Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against the Borrower and in and to the Mortgaged Property, including but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as the Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of the Lender: (i) institute proceedings for the complete foreclosure of this Mortgage in which case the Mortgaged Property may be sold for cash or upon credit in one or more parcels under ordinary or executory process, at the Lender's sole option, and with or without appraisement, appraisement being expressly waived; or (ii) or institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained in this Mortgage or the Note; (iii) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage; or (iv) apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without regard for the adequacy of the security for the Obligations and without regard of the solvency of the Borrower or of any person, firm or other entity liable for the payment of the Obligations; or (iv) or pursue such other remedies as the Lender may have under applicable law, including, without limitation, as a secured party under the UCC.

(d) The proceeds or avails of any sale made under or by virtue of this Section, together with any other sums which then may be held by the Lender under this Mortgage, whether under the provisions of this Section or otherwise, shall be applied in such manner as the Lender, in its sole discretion, shall determine.

(e) Upon any sale made under or by virtue of this Section, the Lender may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying

14-12177 - #42-1  File 06/16/17  Enter 06/16/17 15:26:09  Exhibit pay history    contract note    mortgage    name change Pg 12 of 17

cash therefor may make settlement for the purchase price by crediting upon the Obligations the net sales price after deducting therefrom the expenses of the sale and the costs of the action and any other sums which the Lender is authorized to deduct under this Mortgage.

Section 17. Set-Off. Upon the occurrence of any Event of Default, the Lender shall have the right to set-off any funds of the Borrower in the possession of the Lender against any amounts then due by the Borrower to the Lender pursuant to this Mortgage.

Section 18. Confession of Judgment. For purposes of foreclosure under Louisiana executory process procedures, the Borrower hereby acknowledges and confesses judgment in favor of Lender for the full amount of the Obligations.

Section 19. Attorney Fees. In case the Note is placed in the hands of attorneys at law for the filing of foreclosure proceedings, to protect the rights of Lender or to enforce any of the agreements contained in this Mortgage, Borrower will pay all costs of collection, including but not limited to reasonable attorneys' fees, incurred in connection with the protection of or realization of collateral or in connection with any of Lender's collection efforts, whether or not suit on the Obligations or any foreclosure proceedings are filed. Borrower further agrees that the Obligations shall be increased by the amount of said costs and fees.

Section 21. Keeper. In the event the Mortgaged Property, or any part thereof, is seized as an incident to an action for the recognition or enforcement of this Mortgage by executory process, ordinary process, sequestration, writ of fieri facias or otherwise, the Borrower and the Lender agree that the court issuing any such order shall, if petitioned for by Lender, direct the applicable sheriff to appoint as a keeper of the Mortgaged Property, the Lender or any agent designated by Lender or any person named by the Lender at the time such seizure is effected. This designation is pursuant to Louisiana Revised Statutes 9:5136 through 5140.2, inclusive, as the same may be amended, and Lender shall be entitled to all the rights and benefits afforded thereunder. It is hereby agreed that the keeper shall be entitled to receive as compensation, in excess of its reasonable costs and expenses incurred in the administration or preservation of the Mortgaged Property, an amount equal to the lesser of $200 per day or 4% of the gross revenues of the Mortgaged Property. The designation of keeper made herein shall not be deemed to require Lender to provoke the appointment of such a keeper.

Section 22. Waivers. The Borrower waives in favor of the Lender, any and all homestead exemptions and other exemptions of seizure or otherwise to which Borrower is or may be entitled under the constitution and statutes of the State of Louisiana insofar as the Mortgaged Property is concerned. The Borrower further waives: (a) the benefit of appraisement as provided in Louisiana Code of Civil Procedure Articles 2332, 2336, 2723 and 2724, and all other laws conferring the same; (b) the demand and three days delay accorded by Louisiana Code of Civil Procedure Articles 2639 and 2721; (c) the notice of seizure required by Louisiana Code of Civil Procedure Articles 2293 and 2721; (d) the three days delay provided by Louisiana Code of Civil Procedure Articles 2331 and 2722; and (e) the benefit of the other provisions of Louisiana Code of Civil Procedure Articles 2331, 2722 and 2723, not specifically mentioned above.

Section 23. Authentic Evidence. Any and all declarations of facts made by authentic act before a notary public in the presence of two witnesses by a person declaring that such facts lie within his knowledge, shall constitute authentic evidence of such facts for the purpose of executory process.

Section 24. Notices. Any notice or demand which, by provision of this Mortgage, is required or permitted to be given or served by the Lender to or on the Borrower shall be deemed to have been sufficiently given and served for all purposes (if mailed) three calendar days after being deposited, postage prepaid, in the United States mail, addressed to the Borrower at the address set forth on Page 1 hereof.

Section 25. Amendment. Neither this Mortgage nor any provisions hereof may be changed, waived, discharged or terminated orally or in any manner other than by an authentic instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

Section 26. Invalidity. In the event that any one or more of the provisions contained in this Mortgage shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Mortgage.

14-12177 - #42-1  File 06/16/17  Enter 06/16/17 15:26:09  Exhibit pay history    contract note    mortgage    name change Pg 13 of 17

Section 27. <u>Certificates</u>. The production of mortgage, conveyance, tax research or other certificates is waived by consent, and the Borrower and the Lender agree to hold me, Notary, harmless for failure to procure and attach same.

    THUS DONE AND PASSED on the day and in the month and year hereinabove first written, in the presence of the undersigned witnesses who hereunto sign their names with the Borrower, the Lender and me, Notary, after due reading of the whole.

WITNESSES: *[signature]*

*[signature] Rosalinda M. Bauer*

BORROWER: *[signature] Wayne Chelette*

*[signature] Shawna Jane Chelette*

LENDER:
21ST CENTURY MORTGAGE CORPORATION

By: *[signature] Myra Finley*

*[signature] Elizabeth J. Wallace*
NOTARY PUBLIC

568

FOM.1WP/P23.003/050196

- 6 -

C 3169   1551669

STATE OF LOUISIANA

PARISH OF BOSSIER

INMOBILIZATION OF MOBILE HOME

BEFORE ME, the undersigned Notary Public appeared WAYMON (NMN) CHELETTE, II (SSN# 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   ) and SHAWNA LANE CHELETTE (SSN# 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   ), husband and wife, residents of Caddo Parish, Lousiana, whose mailing address is 4970 Quiet Acres Road, Shreveport, Louisiana 71107, who declared that:

Appearers are the owners of a mobile home located on Lot Forty-Three (43), Quiet Country, a subdivision in Caddo Parish, Louisiana, together with all buildings and improvements thereon and all rights thereto belonging, having a municipal address of 4970 Quiet Acres, Shreveport, Louisiana 71107, which property is owned by Appearers and they desire to have the mobile home officially immobilized, being attached to said property.

NOW THEREFORE, Appearers do hereby declare that certain 1997 mobile home Serial No.: OC 05 97 01262B, Make: Oak Creek, Model: Nationwide #974, Width 15'6", Length 72' being a mobile home located on and forming a part of the above described property is hereby immobilized to said property and is a part thereof.

Appearers have attached a copy of the "Manufacturer's Statement of Origin: to this document.

THUS DONE AND SIGNED in the presence of the undersigned Notary Public and competent witnesses on this 20th day of March, 1997.

WITNESSES:

_____        _____
                                  WAYMON (NMN) CHELETTE, II

_____        _____
                                  SHAWNA LANE CHELETTE

_____
NOTARY PUBLIC

CC 46

## MANUFACTURER'S STATEMENT OF ORIGIN TO A MANUFACTURED OR MOBILE HOME

The undersigned CORPORATION hereby certifies that the new Manufactured or Mobile Home described below, the property of said CORPORATION,

has been transferred this __5th__ day of __February__ 19__97__

on Invoice No. __10262__

to __Nationwide of Corpus Christi, Inc.__
(Distributor, Dealer, Etc.)

whose address is __3500 East Texas Street__
(Street, City and State)

__Bossier City, LA  71111__

Trade Name __OAK CREEK__ Series or Model __Nationwide #974__

Length __72' floor__  Width __15'6"__

Serial No. __OC 05 97 10262B__  Year __1997__

Shipping Weight __34,560__

H.U.D. LABEL NO. __PFS-437958__

The CORPORATION further certifies that this was the first transfer of such new Manufactured or Mobile Home in ordinary trade and commerce.

OAK CREEK HOMES, INC.

Charley Boyer

By: _[signature]_    Sales Mgr.
   Signature          Title or Position

4805 East. Loop 820 South
Fort Worth, Texas  76119
Office Address of Signatory (City and State)

CCC 47

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 01/26/2001
010045640 – 2592571

CERTIFICATE OF AMENDMENT
TO
CERTIFICATE OF INCORPORATION
OF
21ST CENTURY MORTGAGE CORPORATION

21st Century Mortgage Corporation, a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, does hereby certify:

First: That by written consent of the Board of Directors, dated as of January 25, 2001, resolutions were duly adopted setting forth a proposed amendment to the Certificate of Incorporation of said corporation, declaring said amendment to be advisable. The resolution setting forth the proposed amendment is as follows:

RESOLVED, that the Certificate of Incorporation of this corporation be amended by changing the Article thereof numbered "First" so that, as amended said Article shall be and read as follows:

"FIRST. The name of the Corporation is 21st Mortgage Corporation."

Second: The corporation has not received any payment for any of its stock.

Third: That said amendment was duly adopted in accordance with the applicable Provision of Section 241 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, said 21st Century Mortgage Corporation, has caused this certificate to be executed this 25th day of January, 2001.

By: _____
Richard B. Ray, Director

TOTAL P.02